JACOB L. HAFTER, ESQ.
Nevada State Bar No. 9303
LAW OFFICE OF JACOB L. HAFTER, P.C.
7201 W. Lake Mead Boulevard, Suite 210
Las Vegas, Nevada 89128
Tel: (702) 405-6700
Fax: (702) 685-4184

Pro Se Plaintiff

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| JACOB HAFTER, ESQ.,<br><br>            Plaintiff,<br><br>    vs.<br><br>ROB BARE, in his official capacity; DAVID CLARK, in his official capacity; GLENN MACHADO, in his official capacity; PHIL PATTEE, in his official capacity; DOE Defendants I through X, inclusive; and ROE CORPORATIONS A through Z, inclusive,<br><br>            Defendants. | Case No.: 2:10-cv-553-PMP-LRL<br><br>**SECOND AMENDED COMPLAINT** |

COMES NOW, Plaintiff JACOB HAFTER, ESQ., and hereby files this complaint for injunctive and declaratory relief against Defendants ROB BARE, DAVID CLARK, GLENN MACHADO, PHIL PATTEE, DOES I through X, and ROES A through Z, for violation of his rights under the First and Fourteenth Amendments to the United States Constitution, and here alleges as follows:

**INTRODUCTION**

1. Jacob Hafter, Esq., as a candidate for Attorney General of the State of Nevada, issued a press release on April 7, 2010 as a political candidate criticizing the incumbent Attorney General for engaging in acts which were allegedly violated the attorney-client privilege in violation of Rule of Professional Conduct 1.6, and advising that those acts had been brought to

SECOND AMENDED COMPLAINT - 1

the attention of the Nevada State Bar. On the same day, Mr. Hafter spoke to several reporters on a conference call where he restated the contents of his press release. One of those reporters, Elizabeth Crum, referred to Mr. Hafter's comments about the allegations of misconduct by the incumbent in a story that she wrote.

2. On Tuesday, April 13, 2010, a reporter from the Las Vegas Review Journal, Ben Spillman, called Mr. Hafter to inform him that a representative from the State Bar stated that not only was the State Bar not investigating the incumbent for such allegations of misconduct, but that the State Bar has initiated a formal investigation into Mr. Hafter as a result of his April 7, 2010 press release and comments he made to Ms. Crum.

3. On Wednesday, April 14, 2010, Mr. Hafter received a formal letter of investigation from the State Bar.

4. As both the press release as well as the comments made to Ms. Crum were political speech protected by the United States Constitution, the State Bar's disciplinary proceedings are unconstitutional.

5. On or about May 27, 2010, Mr. Clark informed Mr. Hafter that the screening panel "voted unanimously to impose a Letter of Reprimand" against Plaintiff as a result of the aforementioned facts.

6. To this date, Plaintiff still has not received a copy of the alleged Letter of Reprimand.

7. Further, Defendants have refused to provide Plaintiff with a timely hearing as required under the Supreme Court Rules along with all associated due process rights.

8. In doing so, Defendants have violated Plaintiff's rights under the First and Fourteenth Amendment and Plaintiff seeks any and all remedies available to him at law.

## JURISDICTION

9. Plaintiff brings this action pursuant to 42 U.S.C. § 1983 for violation of his rights under the First and Fourteenth Amendments to the United States Constitution.

SECOND AMENDED COMPLAINT - 2

10. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3). Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202, and injunctive relief pursuant to Fed.R.Civ.P. 65.

**PARTIES**

11. At all times material hereto, Plaintiff, JACOB HAFTER, ESQ. ("HAFTER") was a resident of the State of Nevada.

12. At all times material hereto, Defendant ROB BARE, Esq, is a resident of the State of Nevada, and is sued in his official capacity as Bar Counsel for the State Bar of Nevada. At all times material hereto, Defendant DAVID CLARK, Esq, is a resident of the State of Nevada, and is sued in his official capacity as Deputy Bar Counsel/General Counsel for the State Bar of Nevada.

13. At all times material hereto, Defendant GLENN MACHADO, Esq. is a resident of the State of Nevada, and is sued in his official capacity as Assistant Bar Counsel for the State Bar of Nevada.

14. At all times material hereto, Defendant PHIL PATTEE, Esq, is a resident of the State of Nevada, and is sued in his official capacity as Assistant Bar Counsel for the State Bar of Nevada.

15. The true names and capacities, whether individual, corporate, associate, or otherwise, of DOE Defendants I through X and ROE CORPORATIONS A through Z are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names. Plaintiff is informed and believes, and on that basis alleges, that each of the Defendants designated as DOE Defendants and ROE CORPORATIONS are responsible in some manner for the events and occurrences referenced in this Complaint, and/or owes money to Plaintiff and/or may be affiliated with one of the other Defendants or may claim some interest in the subject matter of this Complaint. Plaintiff will ask leave of the Court to amend this Complaint and insert the true names and capacities of DOE Defendants I through X and ROE CORPORATIONS A

SECOND AMENDED COMPLAINT - 3

## FACTS

16. On or about June 23, 2005, Hafter was admitted to practice law in the State of Nevada.

17. On March 1, 2010, Hafter filed his Petition for Candidacy to run for the Attorney General of the State of Nevada.

18. In his Petition for Candidacy, Hafter declared his candidacy as a member of the Republican party.

19. On or about March 30, 2010, Catherine Masto, the incumbent Attorney General for the State of Nevada ("Masto") wrote a letter to Governor Jim Gibbons declining Governor Gibbon's direction to Masto to join the litigation against the constitutionality of the Patient Protection and Affordable Care Act of 2010 (the "PPACC") on behalf of the State of Nevada.

20. In her March 30, 2010 letter, Masto provided the reasoning for her refusal to join such litigation.

21. In addition to sending the March 30, 2010 letter to the Governor, Masto, either directly or through her office staff, sent the letter directly to various third parties, including members of the press.

22. Shortly thereafter, Deputy Chief of Staff Lynn Hettrick, in an interview on Nevada Newsmakers, a television program, announce that the Governor had never waived attorney-client privilege or otherwise authorized Masto to send the March 30, 2010 letter to third parties.

23. On April 2, 2010, Hafter spoke with David A. Clark, Esq. regarding allegations of misconduct by Masto.

24. During that conversation, Hafter encouraged Defendant to take appropriate action as a result of such allegations.

SECOND AMENDED COMPLAINT - 4

25. On April 7, 2010, at approximately 12:35 pm, Hafter, on campaign letterhead, issued a press release entitled "HAFTER RESPONDS TO ALLEGATIONS MASTO VIOLATES ATTORNEY ETHICS RULES" (the "Press Release").

26. The allegations to which Hafter was referring to were those made by various representatives of the Governor.

27. The Press Release stated:

> **LAS VEGAS, Nevada** – An exchange of letters between Governor Jim Gibbons and Attorney General Catherine Masto regarding the State's participation in a legal challenge to Obamacare has become public. The problem, however, is that the Governor's office did not authorize the release of the March 30, 2010 letter written by Ms. Masto; rather, Ms. Masto took it on her own accord to send a copy of the letter to multiple media outlets in addition to Governor Gibbons. This has been confirmed by the Governor and his staff over the past 24 hours in various media outlets.
>
> As the attorney to the State of Nevada, Ms. Masto, however, is bound by the Rules of Professional Conduct. Rule 1.6 prevents the unauthorized release of attorney-client information by an attorney. Such release of any attorney-client information may only be consented to by the client. The release of the March 30, 2010 letter may have been an unauthorized release of confidential information in violation of Rule 1.6.
>
> "Ms. Masto, as the State's head counsel must not only represent the State of Nevada, but do so in such a manner that complies with the Rules of Professional Conduct," stated Jacob Hafter, Esq., attorney and Republican candidate for Attorney General. "Regardless of whether this specific issue has become a public issue, such publicity is only authorized by the Governor, Ms. Masto's client. An attorney may never release any work product to the press unless that attorney has the express consent of her client. Her blatant disregard for her professional duties to the State is yet another example of why she must be replaced in November," continued Mr. Hafter.
>
> Mr. Hafter, who also sits on the Southern Nevada Disciplinary Board for the State Bar, was made aware of this issue on Friday, April 2, 2010. Pursuant to Rule 8.3, where a "lawyer who knows that another lawyer has committed a violation of the Rules of Professional Conduct" has a duty to report such misconduct, Mr. Hafter called the Bar and confirmed that a report of Ms. Masto's violation was made to the State Bar. "The State Bar has a duty to investigate all complaints made to it regarding conduct of lawyers and to take appropriate action," stated Mr. Hafter. "I am confident in the professionalism of the Bar, their counsel and their ability to investigate this matter and take appropriate action."

28. On April 7, 2010, at approximately 3:00 p.m., Hafter participated in a teleconference hosted by the Nevada News Bureau regarding PPACC and Nevada's decision to join the litigation against it.

SECOND AMENDED COMPLAINT - 5

29. In that teleconference, Hafter discussed the contents of the Press Release.

30. On April 8, 2010, Elizabeth Crum authored a newspaper article that included coverage of the teleconference.

31. In her article, she stated in part:

```
Hafter said he believes the Attorney General has been "derelict in
her duties" and that her refusal to cooperate with the Executive
Branch has created a liability that may be punishable as a
misdemeanor under state law.

Hafter also said he today received confirmation from a reliable
source inside the Nevada State Bar that a formal ethics complaint
has been filed against the Attorney General for violations of
attorney-client privilege when she disclosed certain pieces of
information in her publicized response and explanation letters to
Governor Gibbons.
```

32. On April 13, 2010, at around 10:30 am, Benjamin Spillman, a reporter for the Las Vegas Review Journal, called Mr. Hafter at his office.

33. During that call, Mr. Spillman informed Mr. Hafter that Phil Pattee, Esq., assistant bar counsel for Defendant , stated that not only was Defendant not investigating Masto for the allegations of misconduct, but that "an investigation and a grievance file has been opened in relation to Mr. Hafter himself."

34. Hafter immediately contacted Defendant and inquired as to the nature of the investigation against him; however, Defendant refused to disclose any details to Hafter.

35. On April 13, 2010, David Clark, Esq., Deputy Bar Counsel, signed a letter to Mr. Hafter informing him of Defendant's concerns of professional misconduct which gave rise to the opening of Grievance File No. N10-18-1227.

36. Hafter received the April 13, 2010 investigatory letter (the "Letter") on April 14, 2010.

37. All of the concerns of professional misconduct detailed in the Letter stem from the Press Release and Ms. Crum's report of Hafter's comments.

38. The Letter requested a response from Hafter within ten (10) days.

39. Hafter responded in writing on April 14, 2010.

40. The investigation and prosecution of Grievance File No. N10-18-1227 are proceeding in accordance with Supreme Court Rule 105.

SECOND AMENDED COMPLAINT - 6

41. Defendant Clark notified Mr. Hafter via email on May 27, 2010 that:

> The Panel voted unanimously to impose a Letter
> of Reprimand on the matter opened by the State
> Bar and to dismiss the matter filed by Kenneth
> Douglas.  You will receive written notice and a
> copy of the proposed Letter, from which you
> will have 14 days to either accept or object.
>
> David Clark

42. On June 9, 2010, Mr. Hafter wrote Mr. Clark a letter notifying him of his formal objection to the Letter of Reprimand and requesting a formal hearing.

43. On June 15, 2010, Mr. Hafter made a second request for a formal hearing.

44. On June 16, 2010, Mr. Clark admitted that "the State Bar has not yet served upon you the proposed Letter of Reprimand under SCR 105(1)(b)."

45. On June 16, 2010, Mr. Hafter responded to Mr. Clark's email stating that he would accept any documents which the Bar wished to serve on him.

46. On June 20, 2010, David McGrath Schwartz wrote an article for the Las Vegas Sun where he stated that Travis Barrick won the primary "when the establishement-backed candidate was mired in a bar complaint."

47. On July 7, 2010, Mr. Hafter wrote Mr. Clark an email asking on the status of the formal hearing.

48. On July 25, 2010, the Las Vegas Review Journal wrote an article regarding the fact that despite numerous requests, the Bar has ignored his requests for due process associated with the alleged Letter of Reprimand.

49. On July 26, 2010, the Bar filed a formal complaint against Mr. Hafter.

50. On July 26, 2010, Mr. Hafter answered the complaint.

51. On July 26, 2010, in trying to further understand the charges made against him, Mr. Hafter wrote a letter to Rob Bare, Esq., asking him to provide the specific legal standard for "knowingly making a false statement of material fact" which would be used to prove their case against Mr. Hafter.

52. To date, that request has gone unanswered.

SECOND AMENDED COMPLAINT - 7

53. Since April 13, 2010, Hafter has been banned by Defendant Clark from performing his duties related to sitting on the Southern Nevada Disciplinary Board of the State Bar of Nevada.

## COUNT I – 42 U.S.C. § 1983
## First and Fourteenth Amendment Violation
## Official Capacity

54. Hafter realleges the aforementioned paragraphs as though fully set forth.

55. The foregoing facts establish a basis for an order from this Court enjoining Defendants from continuing its prosecution of Grievance File No. N10-18-1227.

56. Defendants are state actors, or acting under the color of state law, for purposes of § 1983.

57. The acts of Defendants as described herein were purposeful and arise from official policy or custom.

58. The Fourteenth Amendment of the United States Constitution guarantees that no state shall deprive any person of liberty without due process of law.

59. The First Amendment of the United States Constitution, applicable to the states under the Fourteenth Amendment, guarantees the right of freedom of speech, especially political speech -- a right which stand at the very apex of constitutional protection when exercised, as here, in an effort to influence the conduct of government.

60. Defendants' conduct in opening Grievance File No. N10-18-1227 against Hafter and threatening him with fines and other punishments, including potential sanctions related to his license to practice law, represents is a policy and practice which, on its face and as applied to Hafter

  a. impermissibly infringes upon Hafter's fundamental right to freedom of speech guaranteed by the First and Fourteenth Amendments of the United States Constitution; and

  b. threatens Hafter's protected property interest in his license to practice law in the State of Nevada.

61. Defendants issued a Letter of Reprimand against Hafter for acts which he alleges are associated with political speech.

62. Defendants' unlawful infringement of Hafter's political speech also has the very real potential to chill the very speech and robust political debate that the First Amendment of the United States Constitution is designed to protect,

63. In violating Hafter's constitutional right to freedom of speech, Defendants have caused and continue to cause damage to Hafter, who is now forced to defend against a frivolous grievance and investigation.

64. The violation of Hafter's constitutional rights may be redressed pursuant to 42 U.S.C. § 1983.

## COUNT II – 42 U.S.C. § 1983

### Fourteenth Amendment Violation

65. Hafter realleges the aforementioned paragraphs as though fully set forth.

66. Defendants are state actors, or acting under the color of state law, for purposes of § 1983.

67. The acts of Defendants as described herein were purposeful and arise from official policy or custom.

68. The Fourteenth Amendment of the United States Constitution guarantees that no state shall deprive any person of liberty without due process of law.

69. Defendants issued a Letter of Reprimand against Hafter for acts which he alleges are associated with political speech.

70. Defendants refuse to allow Hafter to see the Letter of Reprimand.

71. Defendants have filed a formal complaint against Hafter based upon Hafter's objection to the Letter of Reprimand.

72. Hafter has requested Defendants to provide him with the legal standards related to the allegations made against him.

73. Defendants have refused to provide or clarify the legal standards related to the allegations made against him.

74. By refusing to allow Hafter to see the Letter of Reprimand and clarify the legal standards used in the prosecution of the formal complaint, Hafter has not been provided adequate notice in order to defend himself.

75. Defendants' unlawful infringement of Hafter's political speech also has the very real potential to chill the very speech and robust political debate that the First Amendment of the United States Constitution is designed to protect,

76. In violating Hafter's constitutional right to freedom of speech, Defendants have caused and continue to cause damage to Hafter, who is now forced to defend against a frivolous grievance and investigation.

77. The violation of Hafter's constitutional rights may be redressed pursuant to 42 U.S.C. § 1983.

**COUNT III – 42 U.S.C. § 1983**

**Deprivation of Property Rights**

**Against Defendant Clark**

78. Hafter realleges the aforementioned paragraphs as though fully set forth.

79. Defendants are state actors, or acting under the color of state law, for purposes of § 1983.

80. Hafter is a member of the Southern Nevada Disciplinary Board of the State Bar of Nevada ("Board").

81. Such membership is directly related to Hafter's license to practice law in the State of Nevada.

82. Participation on the Board at specific hearings or screening panels is voluntary.

83. When an opening arises, the members of the Board are asked if they wish to participate.

84. Hafter has received numerous inquires as to his availability to sit for various panels and hearings on behalf of the Board between May and the date of this complaint.

85. On occasion, Hafter has responded in the affirmative.

86. In fact, at times, Hafter was scheduled to service as a hearing officer or screening panel member.

87. However, such scheduling was cancelled when Defendant Clark discovered that Hafter had scheduled himself.

88. Hafter was then removed from serving in such positions.

89. When asked why he was removed, Hafter was told that Defendant Clark would not allow him to serve.

90. Such preclusion is a deprivation of Hafter's ability to exercise all of the rights and privileges related to his license to practice law.

91. Such deprivation has occurred without Hafter being afforded any due process.

92. The violation of Hafter's constitutional rights may be redressed pursuant to 42 U.S.C. § 1983.

**DEMAND FOR RELIEF**

WHEREFORE, Plaintiff, JACOB HAFTER, ESQ., respectfully requests this Court to:

A. Assume jurisdiction of this matter.

B. Declare that Defendants' opening of Grievance File No. N10-18-1227 as a result of the Press Release and Ms. Crum's report of Hafter's comments violated Hafter's clearly established First and Fourteenth Amendment rights.

C. Declare that issuance of a Letter of Reprimand in this matter violated Hafter's clearly established First and Fourteenth Amendment rights.

D. Enjoin Defendants from continuing to prosecute Grievance File No. N10-18-1227.

E. Award Hafter nominal damages for the violation of his First and Fourteenth Amendment rights.

F. Award Hafter his attorney fees and costs for bring this action pursuant to 42 U.S.C. § 1988.

G. Enter all other relief that the Court deems just and proper.

///

///

///

SECOND AMENDED COMPLAINT - 11

Dated this 2nd day of September, 2010.

By: _____
JACOB L. HAFTER, ESQ.